UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                              Plaintiff,

                                                                    DECISION AND ORDER

                                                                    03-CR-6142L

                    v.

JOHN CRUZ,

                              Defendant.
_____


On June 28, 2007, defendant, John Cruz, pleaded guilty to Counts 1 and 2 of the Second

Superseding Indictment in this case, which charged him, respectively, with conspiracy to possess

with intent to distribute, and to distribute, five kilograms or more of cocaine, fifty grams or more of

cocaine base, 100 grams or more of heroin, and an unspecified quantity of marijuana, in violation

of 21 U.S.C. § 846, and with conspiracy to possess firearms in furtherance of drug trafficking crimes,

in violation of 18 U.S.C. § 924(o).  Under the terms of the plea agreement, pursuant to Fed. R. Cr.

P. 11(c)(1)(C), the parties agreed that if the Court accepted the agreement, defendant would receive

a sentence of 204 months, *i.e.*, seventeen years, imprisonment.  Dkt. #360 ¶ 11A.  The government

also agreed that at sentencing, it would move to dismiss any remaining counts against Cruz, who was

charged in six counts altogether.  *Id.* ¶ 17; Dkt. #83 at 1-5.

Defendant hired new counsel[1] and now moves to withdraw his guilty plea.  The basis for

Cruz's motion is his assertion that he is in fact innocent, and that his plea was not voluntarily made.

He contends that the only reason he pleaded guilty was that he had been told by his then-attorney that

if Cruz pleaded guilty, the government would also agree to a plea deal for Cruz's nephew and

codefendant, Rosendo Santiago, whom Cruz claims to "love ... like a son."  Cruz Aff. (Dkt. #391)

¶ 6. Cruz alleges that his lawyer told him that if Cruz refused the government's plea offer, the

government would "force [Santiago] to go to trial," and that if found guilty, Santiago would probably

get a lengthy prison term.  *Id.* ¶¶ 6-10.


## DISCUSSION

### I. Withdrawal of Guilty Pleas:  General Principles

Rule 32(e) of the Federal Rules of Criminal Procedure provides that the court may grant a

motion for leave to withdraw a guilty plea upon a showing of a "fair and just reason" for doing so.

Nonetheless, "it is basic that '[a] defendant has no absolute right to withdraw his guilty plea.'"

*United States v. Torres*, 129 F.3d 710, 715 (2$^d$ Cir. 1997) (quoting *United States v. Williams*, 23 F.3d

629, 634 (2$^d$ Cir.)), *cert. denied*, 513 U.S. 1045 (1994).  "The defendant bears the burden of showing

that there are valid grounds for relief."  *United States v. Maher*, 108 F.3d 1513, 1529 (2$^d$ Cir. 1997).

In determining whether a "fair and just reason" exists to grant a motion to withdraw a guilty

plea, the court may consider various factors, including:  the amount of time that has elapsed between

the plea and the motion; whether the defendant is asserting his innocence; the likely voluntariness

---

[1]Different retained counsel represented defendant at the guilty plea proceedings.  Present
counsel is defendant's third attorney.

of the plea; and any prejudice to the government.  *Torres*, 129 F.3d at 715; *United States v. Doyle*, 981 F.2d 591, 594 (1st Cir. 1992).  "One especially important consideration is the defendant's answers to the questions posed at his Rule 11 hearing," *United States v. Trussel*, 961 F.2d 685, 689 (7th Cir. 1992), which "carry a strong presumption of veracity ..." *Torres*, 129 F.3d at 715 (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  Because "answers contained in [the plea proceeding] are binding," a court "cannot allow [a defendant] to disavow the answers he gave as easily as he wishes."  *United States v. Winston*, 34 F.3d 574, 578 (7th Cir. 1994).  Therefore, a "defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea."  *Id.*; *accord United States v. Dukagjini*, 198 F.Supp.2d 299, 303 (W.D.N.Y. 2002).

In addition, while an evidentiary hearing may be appropriate where a defendant has demonstrated factual issues surrounding the voluntariness or general validity of his plea, no hearing is required "if the movant's allegations 'merely contradict[] [his] earlier statements made under oath at his plea allocution.'"  *Maher*, 108 F.3d at 1529 (quoting *United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir. 1992) (brackets in original); *accord Torres*, 129 F.3d at 715; *see also Gonzalez*, 970 F.2d at 1100 ("[n]o hearing need be granted when the allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible, or are simply conclusory") .

It is plain, then, that a "defendant who presents a reason for withdrawing his plea that contradicts the answers he gave at a Rule 11 hearing faces an uphill battle in persuading the judge that his purported reason for withdrawing his plea is 'fair and just.'"  *Trussel*, 961 F.2d at 689.  Rule

11 "provides a thorough hearing [at the time of the plea] to determine the voluntariness and intelligence of guilty pleas, and ... defendants afforded such a hearing should not be easily let off the hook when they feel like changing their minds." *United States v. Coonce*, 961 F.2d 1268, 1276 (7th Cir. 1992). *See also United States v. Schmidt*, 373 F.3d 100, 103 (2d Cir. 2004) (describing standard for withdrawing a guilty plea as "stringent").

The reason for this is simple: "'[s]ociety has a strong interest in the finality of guilty pleas,' and allowing withdrawal of pleas not only 'undermines confidence in the integrity of our judicial procedures,' but also 'increases the volume of judicial work, and delays and impairs the orderly administration of justice.'" *Maher*, 108 F.3d at 1529 (quoting *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) (per curiam)). "The plea of guilty is a solemn act not to be disregarded because of belated misgivings about its wisdom." *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992).

## II. Application to this Case

Applying these principles here, I find that Cruz has failed to show a "fair and just reason" for allowing him to withdraw his guilty plea. Cruz's belated claim of innocence, and his allegation that the government had promised leniency for Santiago if Cruz pleaded guilty, directly contradict his sworn statements at the plea allocution. In addition, even if the government had made such a promise (which the government denies, *see* Government's Response to Defendant's Motion to Withdraw Guilty Plea (Dkt. #393) at 10), that would not invalidate Cruz's plea.

As stated, there is a strong presumption that a defendant's sworn statements at a plea proceeding are true.  *See United States v. Rosen*, 409 F.3d 535, 549 (2[d] Cir. 2005) ("A guilty plea is an unconditional admission of guilt, and constitutes 'an admission of all the elements of a formal criminal charge.'  As to those elements the plea is 'as conclusive as a jury verdict'") (quoting *McCarthy v. United States*, 394 U.S. 459, 466 (1969), and *LaMagna v. United States*, 646 F.2d 775, 778 (2[d] Cir.), *cert. denied*, 454 U.S. 898 (1981)).

Here, the Court went through the entire factual basis for the plea as set forth in the plea agreement, and asked Cruz if it was accurate.  He responded that it was.  Specifically, with respect to paragraphs 5(a), 5(b) and 5(c) of the plea agreement[2], the following colloquy took place between the Court and defendant:

Q. Have you reviewed those paragraphs yourself and with your lawyer?

A. Yes.

---

[2]Those paragraphs read as follows:

a. That between in or about 1996 and in or about April 9, 2004, in Rochester, New York, in the Western District of New York, and elsewhere, the defendant did knowingly combine, conspire and agree with others to commit offenses against the United States, that is, to possess with intent to distribute, and to distribute, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

b. In furtherance of the conspiracy, among other things, the defendant knowingly possessed with intent to distribute and distributed quantities of cocaine on Joseph Place and other areas of Rochester.

c. During the period of the above-described drug conspiracy, the defendant knowingly and willfully agreed with others to possess firearms in furtherance of drug trafficking crimes.  The defendant provided firearms to others knowing that such firearms would be possessed in furtherance of the drug trafficking crimes.  The defendant also accepted firearms from others intending to possess them in furtherance of drug trafficking crimes.

Q. First off, I ask are they – especially as to paragraphs 5A, B and C – are they true and accurate statements about what you did and what you intended relative to the drugs and the firearms?

A. Yes.

Q. And, specifically, during a substantial period, from 1996 to April 9, 2004, it alleges that you conspired with others, that is, you had some agreement with others to commit drug offenses against the United States, that is, to possess with intent to distribute and to distribute at least 5 kilograms of cocaine.  Did you do that?

A. Yes.

Q. And, in fact, in furtherance of that conspiracy it's alleged that at times you did possess cocaine in the area of Joseph Place and other areas for the purpose of distributing them to others.  Did you do that?

A. Yes.

Q. Paragraph C also alleges that during this conspiracy, you had an agreement or an understanding with others to possess firearms to further in some way the drug trafficking crimes, and that you at times provided firearms to others knowing that they would be used to further the drug operation, and that you accepted firearms from others as well for that purpose.  Did all that occur?

A. Yes.

Dkt. #391-2 at 15-16.

The Court also asked Cruz whether he "underst[ood] the matters in the plea agreement," to which he responded, "Yeah," and whether "anybody [had] threatened [him] or forced [him] to come in and take this plea," to which he responded, "No."  *Id.* at 8.  Later in the proceeding, the Court asked Cruz if he was "satisfied with [his attorney's] help and legal advice up to this point," to which he responded, "Yes, sir."  Cruz was asked if he had "any issues or questions or beefs or problems with" his attorney that he wanted to discuss, and Cruz responded, "No."  *Id.* at 19.  Finally, the Court

asked Cruz "once again if [he] ha[d] any questions" that he wanted to raise with the Court or with his attorney before signing the plea agreement, and he responded, "No." *Id.* at 19-20.

In light of these statements, Cruz's present assertions that he is innocent and that his former attorney pressured him to plead guilty ring hollow.  For that reason alone, there is ample reason to deny defendant's motion to withdraw his plea.  *See Torres*, 129 F.3d at 715 (where defendant is "given every chance by the district court to raise any concerns, questions or anxieties about the plea" at the allocution ... bases his motion [to withdraw his plea] on "unsupported assertions of pressure" that are contradicted by his prior "unequivocal admissions under oath," the district court does not abuse its discretion by denying the motion); *United States v. Benedict*, 212 F.Supp.2d 152, 161 (W.D.N.Y. 2002) ("The law is clear that a defendant's statements in support of a motion to vacate which directly contradict statements made under oath during the plea colloquy should be given short shrift").  *See*, *e.g.*, *Dukagjini*, 198 F.Supp.2d at 305 (noting that "when the Court specifically asked Dukagjini if he was satisfied with the help of his attorney, Dukagjini replied that he was satisfied. Although Dukagjini discussed certain concerns he had with the plea agreement relative to forfeiture, he never mentioned a word concerning his attorney or any dissatisfaction with his attorney"); *United States v. Miller*, 3 F.Supp.2d 376, 381 (W.D.N.Y. 1998) (rejecting claims of ineffective assistance and involuntariness where defendant stated at plea colloquy that he was satisfied with his attorney's help and advice, and that no one had forced him or threatened him to get him to plead guilty) (collecting cases).

Aside from Cruz's guilt, there was a significant benefit to Cruz by accepting the plea.  Cruz faced a 40-year minimum term of imprisonment if convicted at trial on all counts.  The government's

case was strong.  Numerous codefendants (six) and others were scheduled to testify against Cruz. It was evident Cruz made a tactical decision to accept the plea and avoid the significant risks incident to a trial.

In addition, even if the government did make Cruz's guilty plea a condition of the government's willingness to enter into a plea agreement with Santiago, that in itself was not improper, nor did it render Cruz's plea involuntary or otherwise defective.  "[I]t is now clearly established in the Second Circuit that the government may impose conditions [in plea bargaining] which relate to the conduct or treatment of others."  *United States v. Clements*, 992 F.2d 417, 419 (2$^d$ Cir.) (citing *United States v. Marquez*, 909 F.2d 738 (2$^d$ Cir. 1990), *cert. denied*, 498 U.S. 1084 (1991)), *cert. denied*, 510 U.S. 919 (1993).   As long as the government had probable cause to prosecute Santiago in the first place, "it was entitled to prosecute [him] fully or offer [him] lenience in exchange for [Cruz's guilty] plea." *Miles v. Dorsey*, 61 F.3d 1459, 1469 (10th Cir. 1995).  *See also United States v. Marquez*, 909 F.2d 738, 742 (2$^d$ Cir. 1990) ("Since a defendant's plea is not rendered involuntary because he enters it to save himself many years in prison, it is difficult to see why the law should not permit the defendant to negotiate a plea that confers a similar benefit on others"); *Politte v. United States*, 852 F.2d 924, 930 (7th Cir. 1988) ("We hold that a good faith prosecution of a third party, coupled with a plea agreement which provides for a recommendation of a lenient sentence for that third party, cannot form the basis of a claim of coercion by a defendant seeking to show that a plea was involuntarily made"); *United States v. Shapiro*, 127 F.Supp.2d 94, 98-99 (D.Conn. 2001) ("In the Second Circuit, it is not unlawful for the government to pressure a

defendant into pleading guilty by threatening to prosecute a third party," as long as the government has probable cause to do so).

Cruz appears to argue that his motion should be granted because of the government's and defense counsel's failure to set forth the alleged promise concerning Santiago at Cruz's plea proceeding. As stated, the government denies that any such promise was ever made, and there is no apparent reason why Cruz himself could not have mentioned it during his plea colloquy; certainly he was given ample opportunity to do so. Furthermore, although defendant quotes the statement in *Clements*, 992 F.2d at 419, that "the preferred practice is to advise the court explicitly of any condition that has been imposed and accepted by each of the pleading defendants," the Second Circuit in that case concluded that the defendant "fully acknowledged the voluntariness of his plea made with full knowledge of all of the circumstances," and that the district judge "did not abuse his discretion in denying the motion to withdraw the plea without a hearing," even though the government had not informed the court at the time of defendant's entry of a guilty plea that the government had imposed as a condition of its plea bargain offer that all of the codefendants then on trial enter guilty pleas as well. *Id.* at 420. Thus, even if the alleged promise was made here, the fact that it was not set forth on the record does not invalidate Cruz's guilty plea.

I also note that, even if such an agreement existed, Cruz does not appear to contend that the government did not live up to its end of the bargain. Cruz contends that his attorney told him that the government would not enter into a plea agreement with Santiago unless Cruz pleaded guilty. Pursuant to a plea agreement, Santiago pleaded guilty to two counts of the indictment on June 28,

2007.  The parties agreed to a sentence of 123 months, subject to the Court's approval under Rule 11(c)(1)(C).  *See* Dkt. #361.

In addition, I find no merit to Cruz's contention that he was pressured by his attorney to plead guilty because his attorney told him that if Cruz went to trial, his codefendants or other cooperating witnesses "were going to come in and testify [against Cruz], and sell their souls, and say whatever they had to, to get any deal they were promised by the Government."  Dkt. #391 at 13 ¶ 5.  The mere fact that his attorney did not paint an optimistic picture of Cruz's chances of acquittal is not a sufficient ground to allow Cruz to withdraw his plea.  *See Miller*, 3 F.Supp.2d at 383 ("All pleas of guilty are the result of some pressures or influences on the mind of the defendant.  A defendant cannot complain of coercion where his attorney, employing his best professional judgment, recommends that the defendant plead guilty") (quoting *United States v. Buckles*, 843 F.2d 469, 472 (11th Cir. 1988), *cert. denied*, 490 U.S. 1099) (1989)) (additional internal quote omitted).

Lastly, although "[t]he Government is not required to show prejudice when opposing a defendant's motion to withdraw a guilty plea where the defendant has shown no sufficient grounds for permitting withdrawal," *Rosen*, 409 F.3d at 546, I believe that the government would be prejudiced were Cruz allowed to withdraw his plea at this late stage.  Three of the six codefendants who were scheduled to testify for the government have already been sentenced, and have received the benefit of whatever cooperation they previously provided to law enforcement authorities.[3]  The Assistant United States Attorney who handled most of the prosecution of this case, up to and including Cruz's guilty plea, has been transferred out of this district.  In addition, the government

---

[3]Another scheduled witness, Shermell Prather, pleaded guilty in a separate criminal case, 04-CR-6157, and was sentenced by Judge Charles J. Siragusa on August 15, 2007.

represents that the physical evidence in this case has been returned to the Rochester Police Department, and its current whereabouts and even existence are uncertain. *See Dukagjini*, 198 F.Supp.2d at 306-07 (finding that prejudice to the government if defendant were allowed to withdraw his plea would be "not insubstantial," where "[a]ll of the other co-defendants ha[d] either pleaded guilty or ... been convicted after trial[, c]ooperating witnesses ... ha[d] been sentenced years ago and received the benefit of whatever leniency was extended," and "[i]t [wa]s not at all clear at this late date whether any of these witnesses would be able and willing to testify for the Government"). Although not necessary to the Court's decision, then, this factor, too, militates against allowing Cruz to withdraw his plea.

In sum, at the very least, this present motion by Cruz appears to be nothing more than a case of "buyer's remorse." As such, Cruz is entitled to no relief.

I believe, though, that there is more to this motion than a simple change of heart. In my view, the inference is clear that this is a tactical ploy. The landscape has now changed. The prosecutor who vigorously prosecuted these cases is gone; many of the cooperating witnesses have been sentenced and have little motivation to testify now; and Santiago has received his plea agreement.

Cruz has presented no fair or just reason to vacate the guilty plea, entered on the eve of trial.

## CONCLUSION

Defendant John Cruz's motion to withdraw his guilty plea (Dkt. #391) is denied.

The parties are to appear for sentencing on February 1, 2008 at 2:00 p.m.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
December 11, 2007